IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | |
|---|---|
| ROBERT L. ROGERS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. |
| ) | 2:00cv109-MHT |
| MICHAEL HALEY, etc., ) | (WO) |
| et al., ) | |
| ) | |
| Defendants. ) | |

CORRECTED OPINION

In this lawsuit, plaintiff Robert L. Rogers, a white male employee of the Alabama Department of Corrections (ADOC), claims that, in the year 2000, he was denied a promotion because of his gender;[1] he seeks prospective-injunctive relief under the Fourteenth Amendment to the United States Constitution, as enforced through 42 U.S.C.

---

1. In an opinion and judgment entered on March 23, 2006, the court entered summary judgment on most of Rogers's other claims. Rogers v. Haley, 421 F.Supp.2d 1361 (M.D. Ala. 2006) (Thompson, J.).

§ 1983.[2]  Under the equal protection clause of the Fourteenth Amendment, "No State shall ... deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV § 1.  "The central purpose of the Equal Protection Clause ... is the prevention of official conduct discriminating on the basis of race."  Washington v. Davis, 426 U.S. 229, 239 (1976).  The Constitution protects Rogers's right to be free from purposeful, gender-based discrimination on the part of an employer.  See Burns v. Gadsden State Community College, 908 F.2d 1512, 1517-18 (11th Cir. 1990) (per curiam).

Rogers names several ADOC supervisors and other employees as defendants in their official capacities.  He properly invokes the jurisdiction of the court pursuant to 28 U.S.C. §§ 1331 (federal question) and 1343 (civil

---

2. Prior to trial, the court understood Rogers to contend that he had been denied this promotion because of his gender and race.  At the beginning of the trial, however, Rogers clarified that he was not claiming race discrimination in this promotion.

rights).  Based on the evidence presented at a bench trial on June 27, 2006, the court finds in favor of defendants and against Rogers.

Under Alabama law, employment registers are used to determine the eligibility of applicants for appointment and promotion to all state merit-system positions.  A register results from a ranking of the scores job applicants receive on an examination.  Before a state agency, such as ADOC, can make an appointment to fill a job vacancy, it must request a "Certification of Candidates."  The agency must select a candidate from the list of certified eligibles.

Rogers has been employed for more than 25 years as a correctional officer at Elmore Correctional Facility in Elmore County, Alabama; at the time of the filing of this lawsuit, he held the rank of correctional officer II, or sergeant.  Rogers claims that he did not receive a promotion in 2000 because of his gender.

Ronald L. Weaver, a retired ADOC warden, testified that, in early 2000, there was an opening for lieutenant with the rank of correctional officer supervisor I at the Loxley Community Base Facility, a "work release" facility. The promotional register for the 2000 promotion, a "Certification of Candidates" for Loxley Work Camp, dated February 25, 2000, reflects that the candidates were ranked in the following order of their scores:

| Cheryl Jackson | White | 94.34 |
| Robert Pivonka | White | 93.98 |
| Robert Rogers | White | 90.50 |
| Mark Pelzer | Native American | 89.94 |
| Wayne Gray | Black | 86.01 |

Weaver recommended Jackson but says that he would have recommended Rogers for the position but for an outstanding court order and an ADOC regulation, which he says he understood to restrict the appointment of males over females on the same certification, regardless as to

4

their qualifications.[3]  For several reasons, the court does not credit Weaver's testimony as to what he says he would have done.

First, Weaver admitted at trial that he did not think women should serve as correctional officers in male prisons and that this belief, in fact, was one of the reasons he preferred Rogers over Jackson.  The court is convinced that this reason was not only one of the reasons, it was the one and only reason Weaver wanted to select Rogers over Jackson.  Jackson was overwhelmingly more qualified than Rogers. She had a higher score and ranked higher on the certificate; because she lived in and had more community ties with the area where the Loxley facility is located, she could use those ties to work with local businesses to secure jobs for inmates;

---

3.  It is unclear whether Weaver says he thought he could not select a higher ranked woman over a lower ranked man or whether he says he thought he could not select a woman over a man on the same certification regardless as to their rank or qualifications.  The court's findings and conclusion would be the same no matter how Weaver's alleged belief is articulated.

she had extensive experience in a work release facility, while Rogers did not; and Jackson had only three disciplinaries while Rogers had 21.

Second, the court does not find Weaver's testimony that he understood an outstanding court order and an ADOC regulation to require the promotion of women over men to be credible.  At the time of the events giving rise to this litigation, ADOC and all other state agencies were subject to a 1970 injunction in <u>United States v. Frazer</u>, 317 F.Supp. 1079, 1091 (M.D. Ala. 1970) (Johnson, J.), which prohibited Alabama state officials from bypassing a higher-ranked African-American applicant in favor of a lower-ranked white applicant on a certificate of eligibles.[4]  The no-bypass rule was imposed in response to

---

    4.  The court order provided that:

> "Defendants shall not appoint or offer a position to a lower-ranking white applicant on a certificate in preference to a higher-ranking available Negro applicant, unless the defendants have first contacted and interviewed the higher-ranking Negro applicant and have
> (continued...)

evidence that, up until 1970, the State of Alabama had unabashedly refused to hire and promote African-Americans to almost any and all non-menial positions in state government because of their race.[5] The no-bypass rule, on its face, does not even discuss gender, and it is not credible that Weaver could have understood it to cover gender.

ADOC had an affirmative action plan and sexual harassment policy that were implemented through Administrative Regulation (AR) 206.  Section I(B)(1) of

---

4. (...continued)
   determined that the Negro applicant cannot perform the functions of the position, is otherwise unfit for it, or is unavailable. In every instance where a determination is made that the Negro applicant is unfit or unavailable, documentary evidence shall be maintained by the defendants that will sustain that finding."

Frazer, 317 F.Supp. at 1091.

5. On May 20, 2005, the Frazer no-bypass rule was suspended. United States v. Flowers, 372 F.Supp.2d 1319 (M.D. Ala. 2005) (Thompson, J.).  As a result, state officials, including the defendants in this case, are no longer obligated to enforce the rule.

7

AR 206 stated until February 22, 2000, that one of the plan's objectives was "To insure that a targeted recruitment program is coordinated, implemented, and designed to reach and attract qualified blacks and women applicants."[6]  On its face, this provision and other related provisions from the state regulation do not

---

6. Other provisions related to § I(B)(1) read as follows:

> "To identify employment categories in which minority groups or women are under-represented in which to devote special attention or remedial efforts.
>
> ***
>
> "To improve the employment of minority and females in all job groups in which they are under-represented, practices will be reviewed on a continuing basis.
>
> ***
>
> "Review records to monitor mobility within the organization.  This will include promotions, transfers, and termination rates for minority and female employees, as compared to other employees."

AR 206, §§ I(B)(3), VIII(C)(1).

require that women be preferred over men in promotions. It is not credible that Weaver could have understood AR 206 to require such.

In conclusion, Weaver wanted to recommend Rogers simply because Weaver did not think women should be correctional officers in male prisons. Weaver's reason is illegal, see Edwards v. Department of Corrections, 615 F.Supp. 804 (M.D. Ala. 1985) (Thompson, J.); he essentially wanted to, but could not, discriminate in favor of Rogers and against Jackson because of their gender. Defendants have established by clear and convincing evidence that Jackson was more qualified than Rogers; the reasons offered by defendants are not pretextual for gender. Roger's gender did not play any role at all in his failure to be promoted in 2000; to the contrary, Roger's gender alone made him Weaver's preferred candidate, and fortunately Weaver did not break the law by promoting Rogers over Jackson.[7]

---

7. To the extent that the evidence could,
(continued...)

An appropriate judgment will be entered.

Done, this the 28th day of June, 2006.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE

---

7. (...continued)
nonetheless, be viewed as establishing that Rogers's gender was a motivating factor in the denial of the 2000 promotion, defendants have shown by clear and convincing evidence, for the reasons given above, that, even in the absence of Rogers's gender as a motivating factor, Jackson would have been selected over Rogers.